OPINION
{¶ 1} Mark L. Huddleson (hereinafter for the sake of clarity referred to by first name only as will the plaintiff-appellee Jennifer Huddleson) is appealing from the decision and final order of the Domestic Relations Court of Montgomery County approving and adopting in full a magistrate's decision that granted Jennifer a civil protection order against Mark. He presents the following sole assignment of error:
 {¶ 2} "The trial court's decision and judgment, of September 23, 2004, granting appellee a civil protection order, was against the manifest weight of the evidence."
 {¶ 3} The procedural history of this case (a somewhat unusual one) as well as the facts of the case are amply but concisely set forth in the opinion and decision of the trial judge, as follows:
 {¶ 4} "This matter is before the Court on the petition for a domestic violence civil protection order filed May 19, 2003 by Jennifer Huddleson (hereinafter `petitioner'). An ex parte civil protection order was filed that same date naming petitioner and four minor children as protected persons. A full hearing on the matter was held June 13, 2003. Present at that hearing were petitioner represented by attorney Kevin Lennen and respondent, Mark Huddleson (hereinafter `respondent') represented by attorney Anthony Comunale. The Magistrate Decision and Permanent Order filed July 18, 2003 found insufficient evidence to grant a protection order for the children but did name the petitioner as a protected party. On July 28, 2003, respondent objected to the magistrate's decision. Pursuant to the Decision and Judgment filed November 25, 2003, the Court remanded the matter of a protection order for the petitioner to the magistrate to be reheard only as to granting a protection order for the petitioner. A hearing on the remand was held March 16, 2004. Present at that hearing were petitioner represented by attorney Kevin Lennen and respondent represented by attorney Anthony Comunale. The magistrate decision granted the petitioner a civil protection order. Respondent filed his objection to the decision on April 26, 2004 and supplemented his objection on July 1, 2004. Petitioner filed her reply to the objection on July 12, 2004. The transcript of the June 13, 2003 hearing was filed September 8, 2003 and the transcript from the March 16, 2004 hearing was filed June 3, 2004. This matter is now ready for decision and judgment pursuant to Civ.R. 53 and Mont. D.R. Rule 4.44.
 {¶ 5} "The Court has thoroughly and independently reviewed the record in this matter to include the magistrate's decision, the objections thereto and the transcript of the proceedings. Based upon that independent and thorough review, the Court makes the following findings of fact and conclusions of law.
 {¶ 6} "There were three incidents giving rise to the filing of the petition. The first occurred in late 1999 or early 2000 when respondent allegedly slapped petitioner while she was pregnant. The second incident occurred approximately three (3) years ago. Petitioner alleged that respondent choked her. She further alleged that respondent's father was called to her aid and witnessed this incident. The third incident occurred on or about May 16, 2003 when petitioner alleged that respondent struck the minor children and threatened her. Petitioner testified that throughout their marriage, respondent would slam doors, throw things, and push her against the wall. She testified that she never called the police or filed for protection as a result of these alleged actions until May 19, 2003. She further testified that she never confided in any relative or friend regarding the alleged incidents.
 {¶ 7} "On cross-examination, petitioner was asked if she knew Cheryl Stefanidis and what was their relationship. Petitioner stated that Ms. Stefanidis was the wife of respondent's friend and that she was not a close friend of the woman in question.
 {¶ 8} "Ms. Stefanidis was called as a witness for the respondent. She testified that the couples socialized three to five times a month and that she and petitioner would be together with their respective children an additional three to four times a month. Ms. Stefanidis also alleged that they spoke on the phone three times a week. Only since the petition for a protection order was filed has their relationship changed.
 {¶ 9} "On cross-examination, Ms. Stefanidis characterized their relationship as `good friends.' She reaffirmed the frequency of their contacts to include sharing vacation times. She denied her failure to contact petitioner during the past eight months indicated that they were not close friends. She denied ever witnessing any violence between the petitioner and respondent. Petitioner had never indicated that she and respondent had any violent arguments other than normal marital disputes. Because of her close relationship with petitioner, Ms. Stefanidis testified that she would have expected petitioner to confide in her of any serious argument with respondent. However, she never complained to her about respondent's alleged violent behavior.
 {¶ 10} "Petitioner testified that approximately 3½ years also, respondent was choking her. She screamed for help and respondent's father came to her aid.
 {¶ 11} "Mr. Lloyd Huddleson, respondent's father was called as a witness. He denied the incident petitioner described had ever happened. He testified that he never saw respondent threaten, push, or restrain petitioner. On cross-examination, Mr. Huddleson was asked only one question: `You love your son don't you?' Transcript at 56. Answer: `Sure.'
 {¶ 12} "Respondent testified that he made no threats to petitioner on the May 13, 2004 incident. He admits slapping his wife five years ago saying:
 {¶ 13} "A. She was frantic and in an out of control state, beating on her stomach with a baby in there. I don't want a goddamn baby, I don't want no fucking baby. And I wanted her (sic) get in control of herself.
 {¶ 14} "Q. She was in labor?
 {¶ 15} "A. Yes.
 {¶ 16} "Q. And she was saying those things?
 {¶ 17} "A. Yes.
 {¶ 18} "Q. And she was hitting herself?
 {¶ 19} "A. Yes.
 {¶ 20} "Q. And that's why you slapped her in the face?
 {¶ 21} "A. Yes.
 {¶ 22} Transcript at 62-63.
 {¶ 23} "As to allegations that he violated the temporary protection order, respondent admitted signing an anniversary card to petitioner after the ex parte was granted. Additionally, he admits leaving a message on her home phone recorder on Father's Day regarding his parenting time with the children. Petitioner filed charges as a result of these incidents. Respondent pled to a disorderly conduct charge.
 {¶ 24} "The Court notes that petitioner filed for her Complaint for Divorce in case 2003 DR 697 on May 21, 2004. Allocation of parental rights and responsibilities is the primary issue being contested in the divorce.
 {¶ 25} "The Court finds based upon the evidence presented that the actions of the respondent constitute domestic violence and as such the objections of the respondent are hereby OVERRULED. Throughout this marriage, the respondent has on several occasions placed the petitioner in fear of imminent serious physical harm and his pattern of conduct has knowingly caused the petitioner to believe that respondent will cause physical harm to her. R.C. 3113.31(A)(1)(b).
 {¶ 26} "IT IS THEREFORE ORDERED as follows:
 {¶ 27} "1. The respondent's objections to the Magistrate Decision and Permanent Order granting the Civil Protection Order filed April 14, 2004 are hereby overruled.
 {¶ 28} "2. The Magistrate Decision and Permanent Order filed April 14, 2004 is adopted as though fully rewritten herein and attached hereto.
 {¶ 29} "3. All stays as a result of the objection of the magistrate's decision are hereby vacated.
 {¶ 30} "4. Costs are hereby waived.
 {¶ 31} "It is so ordered."
 {¶ 32} This court has held that "in considering a challenge to the weight of the evidence [an appellate court] must review the entire record, independently weigh the evidence and all reasonable inferences, and assess the credibility of witnesses, to determine whether in resolving conflicts in the evidence the trial court clearly lost its way and created a manifest miscarriage of justice." Lovett v. Wenrich,
Montgomery App. No. 19497, 2003-Ohio-4587. This court has further employed an abuse of discretion standard in reviewing a trial court's decision on a petition for domestic violence protection order. Rank v.Rank, (December 5, 2003), Montgomery App. No. 19986. We further said in that case that "we will not disturb the choice made by the trier of fact between credible witnesses and their conflicting testimony unless it is so incredible that it defies belief." Id.
 {¶ 33} The appellant is essentially arguing that the allegations that the appellee made about domestic violence threats and her fear were uncorroborated by any witnesses and that he presented significant rebuttal witnesses. We note, however, that in its decision the trial court mentioned significant lapses in the appellant's testimony for the magistrate (which necessarily implicates his credibility) and that it adopted the full decision of the magistrate which included several references to the magistrate's finding a lack of credibility of the appellant in his testimony and that the appellee's testimony "regarding domestic violence incidents to be sufficiently credible."
 {¶ 34} This court has held many times that credibility is for the trier of the facts and, citing the Supreme Court case of Myers v. Garson
(1993), 63 Ohio St.3d 610, 614 that "where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." There is no question that the trial court in this case found competent and credible evidence, both in its own independent review of the testimony at both hearings, and its adoption of the magistrate's decision and opinion to support its conclusions and decision.
 {¶ 35} The sole assignment of error is overruled and the judgment is affirmed.
Brogan, P.J., and Donovan, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio)